FILED
FEB 27 2020
JUDGE ANDREA WOOD
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT A. PATREY, JR | No. 19-CR-917<br><br>Judge Andrea R. Wood |

## PLEA AGREEMENT

1. This Plea Agreement between the UNITED STATES OF AMERICA and the defendant, ROBERT A. PATREY, JR, and his attorneys, ANDREW S. BOUTROS and JOHN R. SCHLEPPENBACH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Plea Agreement have agreed upon the following:

### Charge in This Case

2. The one-count Information in the form attached will charge the defendant with participating in a conspiracy to suppress and eliminate competition by agreeing to rig bids and fix prices of commercial flooring services and products sold in the United States beginning at least as early as 2009, and continuing through at least June 22, 2017, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3. The defendant has read the charge against him contained in the Information, and that charge has been explained fully to him by his attorneys.

4. Defendant fully understands the nature and elements of the crime with which he will be charged.

## Rights of Defendant

5. The defendant understands his rights:

   a. to be represented by an attorney;

   b. to be charged by Indictment;

   c. to plead not guilty to any criminal charge brought against him;

   d. to have a trial by jury, at which he would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

   e. to confront and cross-examine witnesses against him and to subpoena witnesses in his defense at trial;

   f. not to be compelled to incriminate himself;

   g. to appeal his conviction, if he is found guilty; and

   h. to appeal the imposition of sentence against him.

## Agreement to Plead Guilty and Waive Certain Rights

6. The defendant knowingly and voluntarily waives:

   a. the rights set out in subparagraphs 5(b)–(f) above;

   b. the right to file any appeal or collateral attack, including but not limited to an application or motion under 28 U.S.C. § 2241 or 2255, that challenges his conviction, including but not limited to any appeal or collateral attack raising any argument that (1) the statute to which he is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

   c. the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742 or an application or motion under 28

2

U.S.C. § 2241 or 2255, that challenges the sentence imposed by the Court if that sentence is consistent with or below the Government's Recommended Sentence (as defined in Paragraph 17 of this Plea Agreement), regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

  d. Nothing in this Paragraph 6, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Consistent with Fed. R. Crim. P. 11(b)(1)(O), the defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status, including removal from the United States, denial of citizenship, and denial of admission to the United States in the future.

  e. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the Northern District of Illinois.

  7. The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 9 of this Plea Agreement.

8. The United States agrees that at the arraignment, it will stipulate to the release of the defendant on his personal recognizance and will not object to a release condition allowing for travel within the contiguous 48 states, pursuant to 18 U.S.C. § 3142, pending the sentencing hearing in this case.

### Factual Basis for Offense Charged

9. The defendant will plead guilty because he is in fact guilty of the charge described in Paragraph 2 above. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt to the charge contained in the Information:

   a. For purposes of this Plea Agreement, the "Relevant Period" is that period beginning at least as early as 2009, and continuing through at least June 22, 2017.

   b. During the Relevant Period, the defendant was a principal owner of Company B, a corporation organized and existing under the laws of Illinois, with its principal place of business in this District. The defendant's position during most of the Relevant Period was Executive Vice President. During the Relevant Period, Company B was a provider of commercial flooring services and products in the United States. Providers of commercial flooring services and products remove any preexisting flooring products at the job site, prepare the floor surface for installation, and install new flooring materials, including but not limited to carpet, wood, vinyl, tile, and laminate flooring products. During the Relevant Period, Company B's sales of commercial flooring services and products to customers in the United States affected by the violation of 15 U.S.C. § 1 totaled at least $9.41 million.

c. During the Relevant Period, the following six companies, Company A, Company C, PCI Flortech, Inc., Company E, Company G, and Company H, were corporations organized and existing under the laws of Illinois with principal places of business located in this District, and were providers of commercial flooring services and products in the United States.

d. During the Relevant Period, the defendant and certain other individuals at Company B participated in a conspiracy with other companies and individuals engaged in the sale of commercial flooring services and products, including Michael P. Gannon, Company A, Company C, PCI Flortech, Inc., Company E, Company G, and Company H, one purpose of which was to suppress and/or eliminate competition by agreeing to rig bids and/or fix prices of commercial flooring services and products sold in the United States. In furtherance of the conspiracy, the defendant attended meetings and/or participated in conversations with representatives of other companies that provide commercial flooring services and products, in order to discuss methods for rigging bids and/or fixing the prices of commercial flooring services and products. During these meetings and/or conversations, the defendant and his co-conspirators agreed to rig bids and/or fix the prices of commercial flooring services and products to be sold in the United States. The defendant and his co-conspirators exchanged pricing-related information to enable co-conspirator companies to submit complementary bids for commercial flooring services and products to potential customers, so that the agreed-upon co-conspirator would win the business.

e. During the Relevant Period, in some instances, co-conspirators, including employees of general contractors, construction management companies, end users, and/or architectural firms, explicitly requested complementary bids from defendant, which the defendant understood were made without the authorization of or approval from the end user. In other instances, employees of general contractors, construction management companies, end users, and/or architectural firms, made statements to the defendant about the need for additional bids, which the defendant understood to be tacit requests to obtain complementary bids.

f. During the Relevant Period, the defendant made decisions regarding bids that Company B rigged; submitted rigged bids on behalf of Company B, or caused others to submit rigged bids on behalf of Company B, in accordance with the agreement; signed bids on behalf of Company B that he knew were rigged; submitted, or directed his subordinates at Company B to submit, complementary bids on the behalf of other co-conspirator corporations, in accordance with the agreement; solicited, or directed his subordinates at Company B to solicit, complementary bids from other co-conspirator companies so that Company B was the low bidder; provided instructions to subordinates at Company B on the methods, means, and manner to rig bids; sold commercial flooring services and products at collusive and/or noncompetitive prices; accepted payment for commercial flooring services and products at collusive and/or non-competitive prices; and communicated directly with executives, principals, and managers of co-conspirator corporations for the purpose of monitoring and/or ensuring submission of complementary bids.

g. During the Relevant Period, Company B and its co-conspirators sold commercial flooring services and products in the United States in a continuous and uninterrupted flow of interstate trade and commerce. In addition, records and documents necessary for the sale and provision of such services and products by the co-conspirators, as well as payments and solicitations for those services and products, traveled in interstate commerce. The business activities of Company B and co-conspirators in connection with the sale and provision of commercial flooring services and products that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

h. Acts in furtherance of this conspiracy were carried out within the Northern District of Illinois and elsewhere. Commercial flooring services and products that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District and elsewhere.

### Elements of the Offense

10. The elements of the charged offense are that:

a. the conspiracy described in the Information existed at or about the time alleged;

b. the defendant knowingly became a member of the conspiracy; and

c. the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

## Maximum Statutory Penalties

11. The defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 10 years' imprisonment, pursuant to 15 U.S.C. § 1;

   b. A maximum fine of $1 million, or twice the gross pecuniary gain the conspirators derived from the offense, or twice the gross pecuniary loss resulting from the offense, whichever is greatest, pursuant to 15 U.S.C. § 1 and 18 U.S.C. § 3571(b) and (d); and

   c. A term of supervised release of three years following any term of imprisonment, pursuant to 18 U.S.C. §§ 3559(a)(3), 3583(b)(2)) and U.S.S.G. § 5D1.2(a)(2)). If the defendant violates any condition of supervised release, the defendant could be required to serve up to two years in prison, pursuant to 18 U.S.C. § 3583(e)(3).

12. In addition, the defendant understands that:

   a. Pursuant to U.S.S.G. § 5E1.1 or 18 U.S.C. § 3663(a)(3) or 3583(d), the Court may order him to pay restitution to the victims of the offense; and

   b. Pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the defendant to pay a $100.00 special assessment upon conviction for the charged crime.

## Sentencing Guidelines Calculations

13. The defendant understands that:

a. The Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed.

b. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence.

c. The Court will make Guidelines determinations by applying a standard of preponderance of the evidence. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

14. Pursuant to U.S.S.G. § 1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. § 1B1.8(b).

15. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a. There is no *ex post facto* issue under the November 2018 Guidelines Manual.

9

b. **Offense Level Calculations.**

   i. The base offense level for the defendant's antitrust crime is 12, pursuant to U.S.S.G. § 2R1.1(a).

   ii. Because the conduct involved the defendant's participation in an agreement to submit non-competitive bids, the base offense level is increased by one level, pursuant to U.S.S.G. § 2R1.1(b)(1).

   iii. The volume of commerce done by the defendant's principal, Company B, in goods and services affected by the violation totals $9.41 million. Therefore, pursuant to U.S.S.G. § 2R1.1(b)(2)(A), the defendant's offense level is increased by an additional two levels.

   iv. It is the government's position that the defendant was a manager or supervisor of the criminal activity that is the subject of this Plea Agreement, and that criminal activity involved five or more participants. Therefore, the defendant's offense level is increased by an additional three levels, pursuant to U.S.S.G. § 3B1.1(b). Defendant reserves the right to argue that this enhancement does not apply as a matter of law.

   v. The defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the Antitrust Division and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with U.S.S.G. § 3E1.1(b), the defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by U.S.S.G. § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to its determination whether the defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** Based on the facts now known to the government, the defendant's criminal history points equal zero and the defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 15. Combined with the anticipated criminal history category of I, the anticipated advisory Sentencing Guidelines range is 18 to 24 months' imprisonment, in addition to any supervised release the Court may impose. The defendant's fine is determined by U.S.S.G. § 2R1.1(c), which prescribes a fine range from one to five percent of the volume of commerce, but not less than $20,000. The applicable volume of commerce is $9.41 million, resulting in a fine range of $94,100 to $470,500, in addition to any restitution the Court may

impose. The defendant disagrees with this calculation and the resulting sentencing range and reserves the right to advocate for a different calculation and sentencing range.

16. The defendant and his attorneys and the government expressly acknowledge that while none of the Guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain components of those calculations—specifically, those set forth above in Paragraph 15(b)(i)-(iii)—are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in Paragraph 15.

## Sentencing Agreement

17. Pursuant to Fed. R. Crim. P. 11(c)(1)(B) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Attachment A to this Plea Agreement, the United States agrees that it will recommend, as the appropriate disposition of this case, that the Court impose a sentence requiring the defendant to pay to the United States a criminal fine of $62,733.33 payable in full before the 15th day after the date of judgment, a period of imprisonment of 12 months and one day, and no order of restitution (the "Government's Recommended Sentence"). The defendant is free to argue for a lower sentence.

18. In arguing for a lower sentence, the defendant is free to ask the Court to consider the factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence; the defendant understands that the United States may oppose the

defendant's sentencing recommendation based on those factors, including any sentence that does not include a term of imprisonment. The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. § 5K2.0. For a custodial sentence, the United States will not object to the defendant's request that the Court make a recommendation to the Bureau of Prisons that the Bureau of Prisons designate that the defendant be assigned to a Federal Minimum Security Camp (as recommended by the defendant at sentencing) to serve his sentence and that the defendant be released following the imposition of sentence to allow him to self-surrender to the assigned prison facility on a specified date. The defendant understands that the Court will order him to pay a $100 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A), in addition to any fine imposed.

19. The United States and the defendant agree that the applicable Guidelines imprisonment range exceeds the term of imprisonment contained in the Government's Recommended Sentence set out in Paragraph 17. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Attachment A to this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and his commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct. If the

government determines that the defendant has continued to provide full and truthful cooperation as defined in Attachment A to this Plea Agreement, then the government shall move the Court, pursuant to U.S.S.G. § 5K1.1, to depart downward from the low end of the applicable Guidelines range, and it shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 67 percent of the low end of the applicable Guidelines range—specifically, a term of imprisonment of 12 months and one day, as set forth in Paragraph 17. The defendant understands that the decision to depart from the applicable Guidelines range rests solely with the Court.

20. If the government does not move the Court, pursuant to U.S.S.G. § 5K1.1, to depart from the applicable Guidelines range, as set forth above, Paragraphs 17, 18, and 19 of this Plea Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to U.S.S.G. § 5K1.1. The defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to U.S.S.G. § 5K1.1.

21. To enable the Court to have the benefit of all relevant sentencing information, the United States may request, and the defendant will not oppose, that sentencing be postponed until his cooperation is complete.

22. The United States and the defendant understand that the Court retains complete discretion to accept or reject the Government's Recommended Sentence

provided in Paragraph 17 of this Plea Agreement or the defendant's recommended sentence. The defendant understands that, as provided in Fed. R. Crim. P. 11(c)(3)(B), if the Court does not impose either party's recommended sentence, he nevertheless has no right to withdraw his plea of guilty. Neither party may withdraw from this Plea Agreement, however, based on the type or location of the prison facility to which the defendant is assigned to serve his sentence.

## Government's Agreement

23. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Attachment A to this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of sentence, the United States agrees that it will not bring further criminal charges against the defendant for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere (the "Relevant Offense"). The nonprosecution terms of this paragraph do not apply to:

    a.    any acts of perjury or subornation of perjury, in violation of 18 U.S.C. §§ 1621–22; making a false statement or declaration, in violation of 18 U.S.C. §§ 1001, 1623; obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*; contempt, in violation of 18 U.S.C. §§ 401–02; or conspiracy to commit such offenses;

    b.    civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; or

    c.    any crime of violence.

### Representation by Counsel

24. The defendant acknowledges that counsel and the Court have advised him about the risks and benefits of joint representation, including the potential conflicts of interest that may arise from such joint representation, and that, pursuant to Federal Rule of Criminal Procedure 44, the Court has advised the defendant that he may proceed with separate representation. Having been so informed, the defendant has agreed to joint representation with the other defendants in this matter. The defendant has reviewed all legal and factual aspects of this case with his attorneys and is fully satisfied with his attorneys' legal representation. The defendant has thoroughly reviewed this Plea Agreement with his attorneys and has received satisfactory explanations from his attorneys concerning each paragraph of this Plea Agreement and alternatives available to the defendant other than entering into this Plea Agreement. After conferring with his attorneys and considering all available alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea Agreement.

### Voluntary Plea

25. The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## Violation of Plea Agreement

26. The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to provide full, truthful, and continuing cooperation, as defined in Attachment A to this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and also may notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this Paragraph 26), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense that is not time barred on the date of signing this agreement will be tolled for the period between the date of signature of this Plea Agreement and six months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

27. The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads

17

derived therefrom, may be used against him. In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

### Entirety of Agreement

28. This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

29. The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

30. A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

AGREED THIS DATE: 2/27/2020

DANIEL W. GLAD, IL Bar No. 6291567
  daniel.glad@usdoj.gov
  Assistant Chief

ELIZABETH A. HOMAN, VA Bar No. 87637
  elizabeth.homan@usdoj.gov
JASON C. TURNER, IL Bar No. 6226269
  jason.turner@usdoj.gov
CHESTER C. CHOI, CA Bar No. 268410
  chester.choi@usdoj.gov
  Trial Attorneys

U.S. Department of Justice
Antitrust Division
209 South LaSalle Street, Suite 600
Chicago, Illinois 60604
+1.312.984.7200

ROBERT A. PATREY, JR
Defendant

ANDREW S. BOUTROS
JOHN R. SCHLEPPENBACH
Attorneys for Defendant